UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ADUGNA MOSISSA DERESSA IV,<br><br>Plaintiff,<br><br>vs.<br><br>VIAFLEX INC.,<br><br>Defendant. | 4:25-CV-04107-KES<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROTECTIVE ORDER |

Defendant, Viaflex Inc., moves for a protective order and an award of attorney's fees incurred to bring the motion. Docket 21. Plaintiff, Adugna Deressa, opposes the motion and the request for attorney's fees. Docket 32; Docket 40. For the reasons described in this order, Viaflex's motion is granted in part and denied in part.

## BACKGROUND

Deressa filed a complaint on June 18, 2025, alleging employment discrimination. *See* Docket 1. The complaint alleges that Deressa was fired in retaliation for filing a complaint about racial discrimination, in violation of Title VII of the Civil Rights Act. *Id.* at 2. Deressa claims he was wrongfully terminated based on an inaccurate, unverified report that misspelled plaintiff's name as "Adugna Duressa." *Id.* at 4. Deressa alleges Viaflex took no corrective action after he filed a complaint with human resources and created intolerable

working conditions. *Id.* Deressa's final claim alleges Viaflex fired him in retaliation because, when he reported a machine with "a known history of malfunctioning" to human resources as an Occupational Safety and Health Act violation, he was removed from his scheduled shift. *Id.* at 6.

Defendant, Viaflex, answered the complaint on September 23, 2025, and the court issued an order requesting a discovery report and scheduling information. Docket 16; Docket 17. Viaflex submitted a discovery report on October 15, 2025. Docket 18. According to the report, both parties agreed that each party could serve "no more than 30 interrogatories," each party could "take no more than 6 fact-witness depositions[,]" and these depositions could not exceed seven hours. *Id.* at 4. At the end of the discovery report, plaintiff "reserve[d] the right to . . . request professional authentication of all electronic materials produced during discovery, not limited to such as emails and surveillance footage." *Id.* at 6. The parties agreed discovery would be completed by December 1, 2026. *Id.* at 4. The court then issued a scheduling order reflecting the parties' discovery agreements and deadlines. Docket 19.

On November 26, 2025, Viaflex responded to Deressa's first set of thirty interrogatories. Docket 23-1. In conjunction with its responses, Viaflex produced over 650 pages of discovery material. *Id.* Viaflex responded to Deressa's first twenty-seven requests for production of documents on November 26, 2025. Docket 23-2. That same day, Viaflex made its Rule 26(a)(1) initial disclosures that listed individuals with potential discoverable information and identified the insurance agreement, damages computations,

and information related to its claims or defenses within the produced discovery material. Docket 23-3.

Following these disclosures, Deressa served Viaflex with fifty-three requests for admissions, that Viaflex responded to on January 8, 2026. Docket 23-4. Within these requests, Deressa asked Viaflex to admit it misspelled Deressa's name in an email, *id.* at 8, to admit it failed to properly investigate the allegations against Deressa before terminating him, *id.* at 3, 5-6, and to admit facts at the core of Deressa's complaint. *See generally id.*[1] Based largely on a misspelling of Deressa's name in one exhibit that was produced by Viaflex and Deressa's need for further clarification, Deressa sent Viaflex an additional set of twenty-nine interrogatories, with subparts. Docket 23-5. Deressa sent another set of twenty-nine interrogatories, with subparts. Docket 23-6. Viaflex objected to both sets of interrogatories because each exceeded the court ordered limit of thirty. Docket 23-7.

Viaflex's objections did not end Deressa's requests. Deressa then sent general instructions to guide Viaflex's responses along with approximately ten interrogatories, with subparts. Docket 23-10. In January 2026, Deressa sent to Viaflex repeated requests for clarification or additional admissions/production and allegations of improper objections, incomplete production, and inconsistencies. Dockets 23-12; 23-15; 23-16; 23-17; 23-18; 23-20; 23-21; 23-29; 23-32; 23-35; 23-36; 23-37; 23-39; 23-40; 23-42; 35-4.

---

[1] For example, Deressa requests Viaflex admit no written record exists of Deressa stating, "I can't work for a woman," which is Viaflex's main purported reason for termination. *Id.* at 1.

Viaflex answered Deressa's second and third requests for admissions on February 6, 2026,[2] the fourth and fifth set of interrogatories and requests for admissions and production of documents, on April 20, 2026,[3] the sixth set on April 23, 2026,[4] the seventh, eighth, and tenth set plus supplemental requests on April 29, 2026,[5] the ninth set on May 7, 2026,[6] an additional set also labeled "tenth set" on May 22, 2026,[7] and the twelfth set on July 3, 2026.[8] In total, Viaflex has responded to over 430 discovery requests and has produced over 700 pages of documents. Docket 37 at 3. Viaflex has not responded to any of Deressa's requests that it received on or after June 22, 2026 (collectively, the "Pending Discovery Requests"), which includes an additional 113 various discovery requests. Dockets 23-44; 23-45; 23-46; 23-47; 23-48.

[2] In total these two requests amounted to thirty-four requests for admissions. Docket 23-13; Docket 23-14.

[3] These two requests amount to sixty-two requests for admissions, production of documents, or interrogatories. Docket 23-22; Docket 23-23. Most of the fifth set of requests for admissions asked Viaflex to admit allegations that rely on subjective opinions or asked Viaflex to admit it could not define certain phrases in objective terms. Docket 23-23 at 5-8.

[4] This response included thirty-one requests for production of documents and requests for admissions. Docket 23-24.

[5] The seventh, eighth, and tenth set of requests for production of documents and requests for admissions plus supplemental requests included sixty requests for production of documents and requests for admissions. Dockets 23-25; 23-26; 23-30; 23-31.

[6] The ninth set included forty-three requests for production of documents and requests for admissions. Docket 23-27.

[7] Docket 23-30 is identified as Deressa's "tenth set of requests for production" while Docket 23-38 is labeled as Deressa's "tenth set of request for production" and "request for admissions," which included eighteen requests. Docket 23-30; Docket 23-38.

[8] The twelfth set included six requests for production of documents. Docket 23-43.

During this discovery period, on July 17, 2026, Viaflex filed a motion for a protective order. Docket 21. Deressa responded in opposition to the motion on August 27, 2026. Docket 32. Both parties submitted additional arguments related to the motion for a protective order. Docket 37; Docket 40. The court issues the following order.

## DISCUSSION

### I. Protective Order

Viaflex seeks a protective order (1) to relieve Viaflex from its obligation to respond to the Pending Discovery Requests, and (2) to prohibit Deressa from serving Viaflex with any further written discovery requests or requests for clarifications. Docket 22 at 11-12.

The Supreme Court has stated that discovery rules should " 'be construed to secure the just, speedy, and inexpensive determination of every action[]' . . . [and] judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (quoting Fed. R. Civ. P. 1). Federal Rule of Civil Procedure 26 requires all discovery be "proportional" in nature. Fed. R. Civ. P. 26(b)(1). "The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment. In conjunction with this responsibility, the district court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Plaintiffs should not be denied information necessary to establish a claim, but plaintiffs should also not be "permitted to go fishing[.]" *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978) (internal quotation marks omitted).

Under Federal Rule of Civil Procedure 26(c), the court may limit "the scope of disclosure or discovery to certain matters[.]" Fed. R. Civ. Pro. 26(c)(1)(D). Rule 26(b)(2)(C) also allows a court to limit the extent of discovery

> if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

The trial court has significant discretion in either granting or denying a protective order. *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973); *see also Miscellaneous Docket Matter No. 1. v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (finding that the court has broad discretion to decide when a protective order is appropriate and what degree of protection is required). This discretion is necessary, because "[t]he trial court is in the best position to weigh fairly the competing needs and interest of parties affected by discovery. The unique character of the discovery

process requires that the trial court have substantial latitude to fashion protective orders." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (footnote omitted).

The moving party must show "good cause" for protection from "annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). It is the movant's burden to provide the court with "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gen. Dynamics Corp.*, 481 F.2d at 1212 (quoting 8A Wright & Miller, Federal Practice & Procedure § 2035 (3d ed. 1998). Thus, Viaflex, as the party seeking to invoke a protective order, has the burden of proving that the requested order is consistent with the principles of Rule 26(c).

### A. Viaflex's Position

Viaflex argues that Deressa's discovery requests violate Rule 26(c) because they are "unduly burdensome, voluminous, and excessive[.]" Docket 22 at 13. Viaflex urges this court to apply the reasoning set forth in *Breeland v. Yale & Towne Mfg. Co.*, 26 F.R.D. 119, 120 (E.D.N.Y. 1960). *Id.* In that case, the plaintiff had served fifty-eight interrogatories, with lengthy subparts. *Breeland*, 26 F.R.D. at 120. There, the court found plaintiff's broadly phrased contention interrogatories were oppressive or unduly burdensome on the defendant because a "litigant may not compel his adversary to go work for him." *Id.* (quoting *Aktiebolaget Vargos v. Clark*, 8 F.R.D. 635, 636 (D.D.C. 1949); *see also Poulos v. Summit Hotel Props., LLC*, 5:09-CV-4062-RAL, 2010

WL 2640394, at *2 (D.S.D. July 1, 2010) (denying defendant's motion to compel because it requested plaintiff to prepare defendant's trial notebook).

In support of its request for a protective order, Viaflex points the court to examples of Deressa's duplicative discovery requests. Viaflex claims it responded to the first set of requests for production of documents that sought "[a]ll investigation files, reports, notes, or summaries regarding complaints or alleged misconduct involving Plaintiff." Docket 23-2 at 1. But Deressa then made nearly identical requests in his fourth and tenth set of requests for production of documents. *See* Docket 23-22 at 2; Docket 23-30 at 1. In those requests Deressa sought "[a]ll incident reports, internal complaints, or investigation materials relating to any alleged property damage involving Plaintiff" and "documents relating to any investigation into the Alleged Statement, including interview notes, internal communications, and reports created between March 19-26, 2024." Docket 23-22 at 2; Docket 23-30 at 1. Because the alleged misconduct referenced in Deressa's first request for production of documents includes any incidents of property damage and the alleged statement, the court finds Deressa's further requests are duplicative.[9]

---

[9] Viaflex also points the court to another request in Deressa's first set of requests for production of documents that attempts to elicit "disciplinary records[] or written communications concerning [Deressa] from January 1, 2014, through March 31, 2024[]" and another duplicative request within Deressa's tenth set seeking "all performance evaluations, coaching records, or disciplinary documents concerning [Deressa]" from the same time period. Docket 23-2 at 1; Docket 23-30 at 2; *see also* Docket 23-5 at 2 (asking Viaflex to "[d]escribe each alleged act of destruction of property[]"); Docket 23-10 at 3-4 (same); Docket 23-22 at 2 (same).

Viaflex notes additional duplicative requests related to surveillance[10], the misspelling of Deressa's name in an email[11], and date discrepancies[12], which are all requests Viaflex has answered and clarified numerous times. Deressa's additional requests focus on obtaining admissions from Viaflex to confirm verbatim content of documents, interpretations of phrases, accurateness of exhibits, and statements Viaflex claims are directly contradicted by the evidence it has produced in response to other discovery requests.[13] Viaflex has responded in good faith to Deressa's requests, even though it exceeded the agreed upon limits, and communicated over email to help Deressa review and interpret Viaflex's responses. Dockets 23-15; 23-8; 23-28; 23-33; 23-41. Viaflex argues that Deressa's extensive requests violate the court's scheduling order (Docket 19) and it seeks court intervention.

---

[10] Deressa requested "all surveillance video recordings from Viaflex's premises," Docket 23-2 at 4, "all photographs, video recordings, or surveillance footage depicting . . . the alleged incident[,]" Docket 23-22 at 2, "all documents describing the existence . . . of any video surveillance systems[,]" Docket 23-24 at 1, followed by multiple requests for Viaflex to admit it has no video surveillance inside the facility, Docket 23-4 at 5-6; Docket 23-24 at 2-3, which Viaflex had already stated in response to Deressa's first set of discovery requests, Docket 23-2 at 4; *see also* Docket 23-30 at 1-2.

[11] Deressa repeated his requests for Viaflex to admit that an employee misspelled Deressa's name as "Duressa" by rephrasing admissions and requesting unnecessary documents to elucidate the misspelling. *See* Dockets 23-4 at 7-8; 23-5 at 2-3; 23-6 at 3.

[12] Deressa asked Viaflex to admit that March 19, 2024, and March 21, 2024, are two different dates and that one date was referenced in error through many separate requests for admissions even though Viaflex had already addressed Deressa's request over email a few months prior. Docket 23-15; Docket 23-13 at 1-2.

[13] *See* Dockets 23-4 at 1, 4; 23-14 at 2-3; 23-22 at 3-4; 23-23 at 3-4, 9; 23-24 at 3-4; 23-25 at 2-3; 23-26 at 4; 23-27 at 4, 6-7; 23-45.

### B. Deressa's Objections

Deressa objects to the protective order because he claims Viaflex has not established good cause for a sweeping order covering all future written discovery. Docket 32 at 2-3. Deressa does not dispute that he has served Viaflex with 545 discovery requests but he argues this number does not demonstrate the burden placed on Viaflex because Viaflex has not identified how much money or time it would incur if the protective order is not granted. *Id.* at 5. Also, Deressa focuses on the fact that he served additional discovery requests to resolve issues he identified after Viaflex produced 685 pages in response to his first discovery requests. *Id.* at 6. Then, Deressa lists discrepancies he has located within the discovery, which prompted him to request clarification through further requests for admissions asking Viaflex to answer factual issues through further production. *Id.* at 8-10. Deressa contends that the purpose of his repeated discovery requests was to "eliminate every factual and documentary issue." *Id.* at 15.

Discovery is a process to "narrow the issues, to eliminate surprise, and to achieve substantial justice." *Tenbarge v. Ames Taping Tool Sys., Inc.*, 190 F.3d 862, 865 (8th Cir. 1999) (quoting *Mawby v. United States*, 999 F.2d 1252, 1254 (8th Cir. 1993)). Deressa is seeking specific admissions and answers that discovery cannot always provide. Attempting to "meet and confer in good faith" regarding his extra interrogatories, Deressa claimed to seek clarification of prior responses "so that the asserted reasons for termination can be evaluated

on their merits without unnecessary court involvement."[14] Docket 23-10 at 1. But when the parties disagree about factual and documentary issues, additional discovery inquiries cannot provide Deressa with the resolution he desires. Instead, it is the court's role to decide the case on its merits when there are genuine disputes of material fact. *See* Fed. R. Civ. P. 56.

The Eighth Circuit has affirmed a trial court's decision to limit discovery in a similar case. In *Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1202 (8th Cir. 2015), on the eve of trial, Jackson served Allstate with dozens of requests for admissions concerning material facts that Jackson knew were in dispute claiming he intended to "narrow the contested issues in [the] case[.]" The court found these requests frivolous and designed to annoy and burden Allstate. *Id.* In this case, Viaflex answered the complaint and offered alternative reasons for Deressa's termination. Docket 16 at 2-3. Thus, Deressa was aware of the disputed factual issues at the beginning of discovery and pursued answers, admissions, and documents to dispose of all issues. But after repeated attempts to resolve his claims through discovery alone, the process has reiterated the facts in dispute. Like in *Jackson*, Deressa's voluminous requests to Viaflex regarding both known disputed facts and immaterial secondary issues have become frivolous and burdensome.

[14] For example, Deressa asked Viaflex to "[a]dmit that the February 12, 2024 email, when read in its entirety, does not support any conclusion that Adugna Deressa engaged in misconduct or poor behavior." Docket 23-14 at 4. If Deressa contends that there are gaps in the evidence that support a finding in his favor, this argument can be made to the court.

Although Deressa is correct that one unnecessary discovery request does not establish that the entirety of the requests are frivolous and a general assertion that responding to discovery is an undue burden is not sufficient, that is not the case here. Docket 32 at 14, 18. After reviewing the 545 requests, additional written discovery requests would not provide Deressa with substantive discovery proportional to this case. Viaflex has already produced a large amount of responsive documents, communicated with Deressa in good faith to clarify certain issues, and is under a continuing obligation to supplement prior discovery. *See Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) (affirming the district court's denial of defendant's discovery requests when plaintiffs had already produced around four hundred pages of emails and remained under a continuing obligation to supplement earlier productions). Deressa has had ample opportunity to develop the issues of his case. Any further written discovery would be cumulative and impose a burden on Viaflex that is not proportional to Deressa's benefit.[15]

To the extent Deressa maintains that Viaflex never identified a particular request as being an undue burden, that contention is contradicted by the pragmatic reason Viaflex moved for protection initially and the logical consequence of the volume of Deressa's requests. This court will not require

---

[15] The court may limit the scope of discovery "when discovery would burden the party from whom it is sought unduly, in comparison with any advantage it would provide to the discovering party, either because a particular matter is of only minor importance or because it has already been thoroughly gone into and further inquiry would be repetitious." 8A Wright & Miller's Federal Practice & Procedure § 2040 (3d ed. 1998).

Viaflex to act as counsel for Deressa through lengthy correspondence clarifying alleged issues or gaps in the discovery material.

### C. Scope of Protective Order

The next issue is the scope of the protective order. Deressa takes issue with Viaflex's motion for a blanket protective order because he claims it is substantially broader than it needs to be. Docket 32 at 22. Deressa does not ask the court to disregard the original scheduling order, which included a thirty interrogatory limit. *Id.* Instead, Deressa states that he could be ordered to "withdraw or consolidate specified interrogatories[,]" and narrow other "requests by date, subject matter, custodian, or document category[.]" *Id.* Deressa also asks the court to meticulously analyze each request to determine whether it has been answered or is duplicative. *Id.* Because Deressa's first set of interrogatories already met the court ordered limit of 30, he is not entitled to submit further interrogatories without prior court approval. Indeed, Deressa has not included any unanswered interrogatories in the Pending Discovery Requests. Because Viaflex has responded to more than the initial 30 interrogatories, Viaflex is not required to answer any further interrogatories and Deressa is ordered to cease serving interrogatories on Viaflex.

As to the pending requests for admissions, the court grants in part and denies in part Viaflex's motion to relieve it of answering the pending requests. Docket 23-44 contains new requests for admissions related to other similarly situated employees at Viaflex and the reasons for their terminations. Responses to these requests for admissions would provide relevant information

to Deressa as proof in his case. Thus, Viaflex is ordered to respond to this set of requests for admissions. But Docket 23-45 requests Viaflex to admit statements it has already denied concerning Deressa's termination and the PTO policy and to admit the contents or omissions in documents that speak for themselves. Because requiring Viaflex to respond to text it has already admitted or denied or to affirm the text of produced documents would be unreasonably cumulative, Viaflex is not required to respond to Docket 23-45.[16]

Dockets 23-46, 23-47, and 23-48 contain broad requests to produce documents related to managers, internal communications, and duplicative requests for documents related to Deressa's alleged incidents at work.[17] Viaflex has already objected to many of Deressa's pending requests in prior discovery responses or referred Deressa to responsive documents. *See generally* Dockets 23-47; 23-48. The court will not require Viaflex to expend resources to respond to these duplicative requests in Dockets 23-46, 23-47, and 23-48 but reminds

---

[16] In *Michael Sorenson v. Sherburne Cnty.*, 2016 WL 3024046, at *1 (D. Minn. May 25, 2016), the magistrate judge granted a protective order because plaintiff's requests for admissions were asking defendants to admit or deny text that was duplicative of information in the complaint and the 127 requests for admissions were excessive in light of the uncomplicated legal issues. Similarly, here the court has discussed how Deressa's requests are excessive and duplicative. Thus, a protective order is warranted.

[17] For example, one excessively broad and vague request asks for "all documents, internal notes, audio recordings, written statements, emails, or memorandum concerning any interviews, conversations, or information gathered by Viaflex, its management, or its legal counsel from coworkers if any." Docket 23-46 at 1. Additional requests direct Viaflex to clarify prior objections or responses, supplement prior productions, or alternatively admit they possess no responsive documents. Docket 23-47 at 2, 4.

Viaflex of its duty to supplement prior responses under Rule 26(e). *See* Fed. R. Civ. P. 26(e).

Also, the court grants Viaflex's request to limit any further written discovery. Deressa has far exceeded the limits stated in the court's scheduling order and the discovery process has stalemated. This protective order does not eliminate Deressa's avenues to continue discovery through depositions. Rather, this order limits discovery to the proportional needs of this case.

## II. Attorney's Fees

Viaflex requests that the court award its reasonable expenses and attorney's fees incurred in bringing the motion for a protective order. Docket 22 at 18. Viaflex asserts it has "expended significant attorney time responding in good faith to [Deressa's] excessive, duplicative, and immaterial requests" and has conferred with Deressa "in an effort to avoid" seeking court intervention. *Id.*

"Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Lupe Dev. Partners v. Baird*, 175 F.4th 933, 942 (8th Cir. 2026) (quoting *Schlafly v. Eagle F.*, 970 F.3d 924, 936-37 (8th Cir. 2020)). Within a court's inherent power is the "less severe sanction of an assessment of attorney's fees." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (citation modified). Attorney's fees may be assessed "as a sanction for willful

disobedience of a court order." *Greiner v. City of Champlin*, 152 F.3d 787, 790 (8th Cir. 1998).

In this case, the protective order Viaflex seeks is a sufficient remedy. A breach of this court order may result in an award of attorney's fees. If Deressa breaches this protective order, Viaflex may request attorney's fees at that time. Thus, the court denies Viaflex's request for attorney's fees and reasonable expenses incurred from bringing its motion for a protective order.

## III. Conclusion

Viaflex has established good cause for a protective order. Thus, it is

ORDERED that Viaflex's motion for a protective order (Docket 21) is granted in part and denied in part consistent with this opinion. It is further

ORDERED that Viaflex's request for attorney's fees is denied.

Dated November 10, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE